FILED IN OPEN COURT

JUL 1 3 2022

CHARLES R. DIARD, JR.
CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 21-00149-TFM** |
| | ) | |
| **YAN JIAO ZHUO** | ) | |

## PLEA AGREEMENT

The defendant, **YAN JIAO ZHUO**, represented by her counsel, and the United States of America have reached a plea agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

## RIGHTS OF THE DEFENDANT

1.    The defendant understands her rights as follows:

      a.    To be represented by an attorney;

      b.    To plead not guilty;

      c.    To have a trial by an impartial jury;

      d.    To confront and cross-examine witnesses and to call witnesses and produce other evidence in her defense; and

      e.    To not be compelled to incriminate herself.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

2.    The defendant waives rights b through e, listed above, and pleads guilty to Count One of the Superseding Information. Count One charges a violation of 8 U.S.C. § 1324a(a)(2) (continuing to employ illegal aliens).

1

3.      The defendant understands that the statements she makes under oath in the plea of guilty must be completely truthful and that she can be prosecuted for making false statements or perjury, or receive a perjury enhancement at sentencing, for any false statements she makes intentionally in this plea of guilty.

4.      The defendant expects the Court to rely upon her statements here and her response to any questions that she may be asked during the guilty plea hearing.

5.      The defendant is not under the influence of alcohol, drugs, or narcotics. She is certain that she is in full possession of her senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6.      The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. She has discussed the facts of the case with her attorney, and her attorney has explained to the defendant the essential legal elements of the criminal charge which has been brought against her. The defendant's attorney has also explained to the defendant her understanding of the United States' evidence and the law as it relates to the facts of her offense.

7.      The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge beyond a reasonable doubt. The defendant and her counsel have discussed possible defenses to the charge. The defendant believes that her attorney has represented her faithfully, skillfully, and diligently, and she is completely satisfied with the legal advice of her attorney.

8.      The defendant recognizes that pleading guilty may have consequences with respect to immigration status if she is not a citizen of the United States. Under federal law,

2

a broad range of crimes are removable offenses, including the offense(s) to which she is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including her attorney or the district court, can predict to a certainty the effect of her conviction on her immigration status. The defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is her automatic removal from the United States.

9.    A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct. Alterations to the Plea Agreement or Factual Resume initialed only by the defendant and her counsel are not part of this agreement and are not agreed to by the United States.

10.   This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement. There have been no promises from anyone as to the sentence that the Court will impose. The defendant is pleading guilty because she is guilty.

11.   The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation

or prosecution of this matter. This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

## **PENALTIES**

12.    The maximum penalty the Court could impose as to Count One of the Superseding Information is:

a.    6 months' imprisonment;

b.    A fine not to exceed $3,000;

c.    A term of supervised release of 1 year, which would follow any term of imprisonment;

d.    A mandatory special assessment of $10.00; and

e.    Such restitution as may be ordered by the Court.

## **SENTENCING**

13.    The Court will impose the sentence in this case. The United States Sentencing Guidelines are advisory and do not bind the Court. The defendant has reviewed the application of the Guidelines with her attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that she will not be allowed to withdraw her guilty plea if the advisory guideline range is higher than expected, or if the Court departs or varies from the advisory guideline range.

4

14.     The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

15.     The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

16.     Both the defendant and the United States are free to allocute fully at the time of sentencing.

17.     The defendant agrees to tender $100.00 to the U.S. District Court Clerk in satisfaction of the mandatory special assessment in this case. The United States reserves the right to withdraw any favorable recommendations it may agree to within this document if the defendant fails to pay the special assessment prior to or at the time of her sentencing.

## RESTITUTION

18.     Pursuant to 18 U.S.C. §§ 3556 and 3663(A), restitution is mandatory. The defendant agrees to make full restitution as to all relevant conduct regardless of whether it relates to the count of conviction.

## FORFEITURE

19.     The defendant agrees to confess the forfeiture to the United States of all properties which represent proceeds of her criminal activities or which facilitated any aspect of these illegal activities. The defendant agrees that these forfeitable properties include those specifically listed in Superseding Information. The defendant agrees to relinquish any right, title, interest, or claim that she may have regarding the forfeitable properties and to waive any right to notice of their forfeiture.

## FINANCIAL OBLIGATIONS

20.     The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

## UNITED STATES' OBLIGATIONS

21.     The United States will not bring any additional charges against the defendant related to the facts underlying the Superseding Information and will move to dismiss the charges contained in the pending Indictment against the defendant once sentence once sentence is imposed in this case. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

6

22.     The United States will recommend to the Court that the defendant be sentenced at the low end of the advisory sentencing guideline range as determined by the Court.

**APPLICATION OF USSG § 5K1.1 AND/OR FED. R. CRIM. P. 35**

23.     The defendant understands and agrees that she has no right to cooperate, and that the decision whether to allow her to cooperate is reserved solely to the United States in the exercise of its discretion. If the United States agrees to allow the defendant to cooperate, and if the defendant agrees to cooperate, the following terms and conditions apply:

   a. The defendant shall fully, completely, and truthfully respond to all questions put to her by law enforcement authorities regarding the underlying facts of the offense(s) with which she is charged, as well as the underlying facts of any criminal offense(s), state or federal, of which she has information or knowledge.

   b. The defendant acknowledges that she understands that she shall provide truthful and complete information regarding any offense about which she has knowledge or information regardless of whether law enforcement authorities question her specifically about any such offense. This provision requires the defendant to divulge all information available to her even when law enforcement authorities do not know about the defendant's involvement, knowledge or information relating to any particular offense. This requirement extends to all persons about whom the defendant has such knowledge or information.

7

c. The defendant agrees to cooperate completely with all law enforcement authorities in any matters to which her cooperation may be deemed relevant by any law enforcement authority. The defendant agrees to fully comply with all instructions from law enforcement authorities regarding the specific assistance she shall provide. This includes, but is not limited to, consenting to monitored and/or recorded telephone conversations, participating in undercover operations, testifying completely and truthfully before any grand jury, at any pre-trial proceeding, during any trial, and any post-trial proceeding.

d. If the United States deems it necessary, the defendant may be required to take a polygraph examination(s) which will be administered by a government polygrapher. The defendant agrees that the results of any polygraph examination may be used by the United States in its evaluation of whether there has been substantial assistance, and are admissible at sentencing to rebut an assertion by the defendant of bad faith or unconstitutional motive on the part of the United States.

e. The defendant agrees to turn over to the United States any and all documents, tapes and other tangible objects which are in her possession or under her control and which are relevant to her participation in and knowledge of criminal activities, regardless of whether it relates to the charged offense. This obligation is a continuing one and includes materials

8

that the defendant may acquire, obtain, or have access to after the execution of this agreement.

f. The defendant also agrees to identify the assets of any other person which were obtained through or facilitated the defendant's illegal activities or the illegal activities of another.

g. If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable. The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if any, the United States might make in the event that it determines that the defendant has provided substantial assistance. The defendant understands that a mere interview with law enforcement authorities does not constitute substantial assistance. The defendant also understands that, should she provide

9

untruthful information to the United States at any time, or fail to disclose material facts to the United States at any time, or commits a new criminal offense, the United States will not make a motion for downward departure. If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the United States, the United States agrees to recommend that the defendant receive a sentence at the low end of the advisory guideline range.

h. The United States and the defendant agree that any breach of this agreement by the defendant, including but not limited to committing a new offense, failing to cooperate, intentionally withholding information, giving false information, committing perjury, failing to identify assets obtained by her from her illegal activities or obtained by others associated with her or of which she has knowledge, refusing to take a polygraph examination, failing a polygraph examination, or refusing to testify before the grand jury or at any judicial proceeding, would:

(1) permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters underlying the Superseding Information; and

(2) permit the United States to initiate and proceed with the prosecution on any other charges arising from a breach of this agreement. The United States will not be limited, in any respect, in the use it may make against the defendant of any

10

information provided by the defendant during her breached cooperation. Such breach will constitute a waiver of any claim the defendant could make under the United States Constitution, the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, or any statute or case law by which the defendant seeks to suppress the use of such information or any evidence derived from such information.

i. Nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement, including perjury, false declaration, false statement, and obstruction of justice, should the defendant commit any of these offenses during her cooperation. The defendant acknowledges and agrees that the information that she discloses to the United States pursuant to this agreement may be used against her in any such prosecution.

j. The United States and the defendant agree that the defendant will continue her cooperation even after she is sentenced in the instant matter. Her failure to continue her cooperation will constitute a breach of this agreement, and the defendant agrees that under such conditions, the United States will be free to reinstate the charges and the prosecution of the charges in the Superseding Information, which are to be dismissed in accordance with this agreement. Under these circumstances, the defendant expressly waives any

11

rights she may have under the statute of limitations and the speedy trial provisions.

**LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK**

24.     As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge her guilty plea, conviction, or sentence in any district court or appellate court proceedings.

        a.     **EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:

               (1)   any sentence imposed in excess of the statutory maximum;

               (2)   any sentence which constitutes an upward departure or variance from the advisory guideline range.

        The defendant also reserves the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion.

25.     If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

26.     The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the sentence.

12

27.     If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## STIPULATIONS

28.     The defendant agrees to waive her right to confront and cross-examine all witnesses deemed material by the United States. The defendant agrees that their testimony and presence in court proceedings in the case is not needed.

## VIOLATION OF AGREEMENT

29.     The defendant understands that if she breaches any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement remain enforceable against the defendant. In the exercise of its discretion, the United States will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that she might have under the Sixth Amendment and/or Speedy Trial Act.

30.     In addition, if the defendant is released from detention prior to sentencing, she understands that the United States will no longer be bound by this agreement if she violates any condition of her release prior to sentencing or prior to serving her sentence after it is imposed.

## ENTIRETY OF AGREEMENT

13

31.    This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date:    ~~July 1, 2022~~  July 13, 2022

Justin Kopf
Assistant United States Attorney

Date:    July 13 2022

Kasee S. Heisterhagen
Assistant United States Attorney
Deputy Chief, Criminal Division

I have consulted with my counsel and fully understand all my rights with respect to the offense charged in the Superseding Information pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date:    7/13/22

Yan Jiao Zhuo
Defendant

14

I am the attorney for the defendant. I have fully explained her rights to her with respect to the offense(s) charged in the Superseding Information in this matter. I have carefully reviewed every part of this Plea Agreement with her. To my knowledge, her decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, her decision to stipulate to the facts is an informed, intelligent, and voluntary one.

Date: 7/12/22

Arthur Madden
Attorney for Defendant

15

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **CRIMINAL NO. 21-00149-TFM** |
| | ) | |
| YAN JIAO ZHUO | ) | |

## FACTUAL RESUME

The defendant, **YAN JIAO ZHUO**, admits the allegations of Count One of the Superseding Information.

## ELEMENTS OF THE OFFENSE

The defendant understands that to prove a violation of 8 U.S.C. § 1324a(a)(1), as charged in Count One of the Superseding Information, the United States must prove:

1. After hiring aliens for employment, the defendant engaged in a pattern or practice of continuing to employ aliens in the United States; and

2. The defendant knew the aliens are or have become unauthorized aliens with respect to such employment;

## OFFENSE CONDUCT

The defendant, **YAN JIAO ZHUO**, admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for the defendant's plea of guilty. The statement of facts does not contain each fact known to the defendant and to the United States concerning her involvement in the charges set forth in the plea agreement. All dates, amounts, and locations provided below are approximations.

1

## Overview

China Super Buffet Inc. (the "Restaurant") was incorporated in Alabama on July 11, 2000, by Zheng Kong Zheng.  On September 28, 2009, the Restaurant changed its legal name to Asia Super Buffet Inc. with Kong Mei Zheng identified as the owner.  Despite the legal name change, at all times relevant to the Superseding Information, the Restaurant operated under the business name of China Super Buffet.  Since 2009, the Restaurant has been owned by members of the Zheng family.

In May 2009, the U.S. Border Patrol office in Mobile, Alabama received an anonymous tip that the Restaurant was employing and harboring aliens illegally present in the Unites States. Homeland Security Investigations ("HSI"), among other federal agencies, began an investigation into the Restaurant in 2014 and determined that Zheng Kong Zheng and his sister, Kong Mei Zheng, were the primary principals and operators the Restaurant.  HSI's investigation determined that alien employees resided at 505 Newport Drive West, Mobile, Alabama 36609 (the "Newport House").

The Restaurant engaged in a pattern and practice of hiring unauthorized aliens and employing these aliens at the Restaurant.  The defendant, **Yan Jiao Zhuo**, who is the sister-in-law of the former owners and managers of the Restaurant, worked at the Restaurant from approximately 2011 through 2014 and then again from approximately March 2018 through June 2021.  Around September 2019, Kong Mei Zheng transferred her ownership interest in the Restaurant to her brother Zheng Guo Zheng, who is **Yan Jiao Zhuo's** husband.  While Zheng Guo Zheng owned and operated the Restaurant, **Yan Jiao Zhuo** worked as a manager and supervisor at the Restaurant where the employment of illegal aliens continued through June of 2021.

2

**The Investigation**

Surveillance operations by agents with HSI identified a distinct pattern of activity beginning in 2014 where a 2011 GMC white van (the "Van") picks up the workers in the morning from the Newport House and transports them to the Restaurant for the workday. After the Van arrives at the back of the Restaurant in the morning, the workers exit the Van then enter the Restaurant directly through the back door. After the workday, the Van returns the workers to the Newport House.

On four occasions—July 23, 2015, May 12, 2016, October 24, 2017, and August 14, 2018—the Van was stopped by law enforcement in Mobile enroute to the Restaurant. On each occasion, the Van was being driven by of the Restaurant's managers, and the occupants were identified as employees of the Restaurant. Most occupants were either undocumented noncitizens in the United States contrary to law after initially unlawfully entering the United States or unlawfully overstaying a previously issued non-immigrant visa. These undocumented aliens were not authorized to assume lawful employment in the United States. All the undocumented aliens who were passengers during the traffic stop were searched in immigration databases, which confirmed their illegal presence in the United States. According to the Alabama Department of Labor wage records, none of the undocumented aliens were reported as employees during the time that they informed law enforcement that they had worked at the Restaurant.

During the August 2018 traffic stop, the Van's passengers included three undocumented aliens from Mexico, which included C.M.R. and E.M.A. During the traffic stop, Restaurant management was alerted that workers in the Van were unauthorized for employment in the Van had been stopped by law enforcement enroute to the Restaurant. After the traffic stop was

3

completed, the Van proceeded to the Restaurant where all the passengers were dropped off and entered the back door of the Restaurant.

Since 2014, the Restaurant's owners and managers hired and employed unauthorized aliens, who had entered and remained in the United States illegally. Around the end of August 2019, Kong Mei Zheng sold all her interest in the Restaurant to her brother Zheng Guo Zheng, who became the new sole owner of the Restaurant. Despite the new ownership, the Restaurant continued to employ unauthorized aliens. After the ownership transition, during September 2019, HSI agents observed the same pattern and practice of the Van transporting unauthorized aliens to the Restaurant for the workday. **Yan Jiao Zhuo**, who served as a manager, paid the alien employees in cash, in part to help conceal the aliens' employment at the Restaurant.

On June 24, 2021, law enforcement agents executed a federal search warrant at the Restaurant. Law enforcement agents entered the Restaurant and encountered **Yan Jiao Zhuo** in the kitchen along with two illegal alien employees, C.M.R. and M.H.R. The illegal alien employees were interviewed by law enforcement agents. C.M.R., an illegal alien from Mexico who was a passenger in the 2017 and 2018 traffic stops, told law enforcement that he had been employed at the Restaurant since approximately 2016. C.M.R. did not have to show any documentation or identification to be hired at the Restaurant. C.M.R. confirmed that the Restaurant's owners and management knew he was illegally in the United States. C.M.R. was paid approximately $3,000 a month in cash for his wages. Similarly, M.H.R, an illegal alien from Mexico, told law enforcement that he had employed at the Restaurant since approximately 2018. M.H.R. did not have to show any documentation or identification to be hired at the Restaurant. M.H.R. confirmed that the Restaurant's owners and management knew he was illegally in the

4

United States.  M.H.R. was paid approximately $2,500 to $3,000 a month in cash for his wages. Both C.M.R. and M.H.R. identified **Yan Jiao Zhuo** as one of the managers of the Restaurant who would pay their wages while they were employed at the Restaurant.

Between September 2019 and June 2021, **Yan Jiao Zhuo** admits that she aided and abetted Restaurant ownership in the hiring and employment of illegal aliens.  **Yan Jiao Zhuo** further admits that she engaged in a pattern and practice of continuing to employ aliens including, C.M.R. and M.H.R., in the United States knowing that such aliens were unauthorized with respect to such employment.

AGREED TO AND SIGNED.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: _____ July 13, 2022 / July 1, 2022 _____

Justin Kopf
Assistant United States Attorney

Date: _____ July 13, 2022 _____

Kasee Heisterhagen
Assistant United States Attorney
Deputy Chief, Criminal Division

Date: _____ 7/13/2022 _____

Yan Jiao Zhuo
Defendant

5

Date:   7/13/22

Arthur Madden
Attorney for Defendant

6